## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **D.E. a minor, on his behalf by his** | : | |
| **parents, MARIA ENGLISH and** | : | |
| **RONALD SHEFFY,** | : | |
| **Plaintiffs** | : | **Civil Action No. 1:06-CV-2423** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **CENTRAL DAUPHIN** | : | |
| **SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Defendant's motion for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c). (Doc. No. 27.) Both parties have submitted briefs (Doc.

Nos. 28, 29, & 30), and the motion is ripe for disposition. For the reasons that follow, the motion

will be denied in part and granted in part.

## I.    BACKGROUND

At the time of filing, D.E. was a minor diagnosed with a severe learning disability

enrolled in school at the Central Dauphin School District (the "District"). D.E. claims that while

enrolled in the District he was deprived of a free appropriate public education ("FAPE"), as

required by the IDEA, and that he was discriminated against based on his various disabilities.

(Compl. ¶¶ 2, 3.)

In 1994, D.E. was enrolled in a special education program outside the District, but he

transferred into regular Kindergarten classes in the District in 1995. (Doc. No. 1-1, ¶ 34.)

Although D.E.'s school file indicated that he should have been placed in special speech and

language therapy courses, he was not. (Compl. ¶ 35.) Seven months into the school year, the

District evaluated D.E. for speech and language therapy, but did not test him for any other

potential learning disabilities. (Compl. ¶ 36.) D.E. had an extremely difficult time in school; he was forced to repeat Kindergarten at another school within the District. (Compl. ¶¶ 37, 38.)

In 1996, D.E. was re-evaluated, and although more problems were found, the re-evaluation failed to address D.E.'s potential Attention Deficit Disorder. (Compl. ¶ 41.) In response to the evaluation, he was placed in a learning support room and was provided speech therapy. (Compl. ¶ 43.)

In 1997, D.E. moved on to first grade, and his individualized education program ("IEP") was modified to recommend that he be placed in a full-time learning support room and that he continue to receive speech therapy. (Compl. ¶¶ 43-46.) To meet these needs, D.E. transferred from his original school. (Compl. ¶ 47.) At this point, D.E.'s behavior became more erratic, and his parents, concerned, obtained both wrap-around services and therapeutic support staff ("TSS") to attend school with him. (Compl. ¶¶ 49, 50.)

D.E.'s parents continued to have concerns and eventually had D.E. evaluated by Pinnacle Health Services. D.E. was diagnosed as having borderline retardation, extreme difficulties with visual and motor skills, and bi-polar disorder. (Compl. ¶¶ 51, 52.) Pinnacle recommended that the District re-evaluate D.E. within the year. (Compl. ¶ 52.) When the time for re-evaluation arose, the District merely re-assessed D.E. based on information in the Pinnacle report; no new evaluation was conducted. (Compl. ¶ 54.) Nonetheless, the District determined that D.E. needed emotional support services. (Compl. ¶ 54.)

D.E. started second grade in 1998 in a full-time support program, which separated him from the children with whom he had previously attended school. (Compl. ¶ 55.) During the school year, D.E.'s second grade teacher expressed concern about whether the emotional support

class was appropriate for D.E. since he did not seem to need his TSS and he did not display aggressive behavior. (Compl. ¶ 56.) D.E.'s behavioral problems increased throughout the second grade, and he was eventually diagnosed with depression. (Compl. ¶ 58.) Despite D.E.'s increasing behavioral issues, the District never developed a behavioral support program for him. (Compl. ¶ 59.)

In 1999, when D.E. began third grade, his IEP was again modified to read "seriously emotionally disturbed," a classification usually associated with mental retardation, and he was mistakenly placed in a Life Skills Program. (Compl. ¶¶ 61, 62.) D.E. remained in the Life Skills Program throughout third and fourth grade.

In 2001, D.E.'s IEP was again changed, and it was recommended that D.E. participate in regular education courses for his fifth-grade year, with an emphasis on his specific learning disability. (Compl. ¶¶ 66, 69.)

In 2003, when D.E. began sixth grade, his IEP was further modified, and all behavioral and social issues were removed. (Compl. ¶ 73.) At the end of his sixth-grade year, for the first time, D.E. became eligible for extended school year ("ESY") education. (Compl. ¶ 74.) His eligibility was premised on the fact that he was performing two to three grades below where he should have been performing. (Compl. ¶ 74.)

D.E. continued to receive inadequate or inappropriate educational services throughout his seventh-grade year until 2004 when D.E.'s family moved to another county and removed him from the District. (Compl. ¶ 75-77, 79.)

In June 2004, D.E.'s parents requested a due process hearing to determine whether D.E. had been provided with FAPE during his time in the District. (Compl. ¶ 87.) A due process

hearing was held in January and February of 2006 before an impartial hearing officer. (Doc. No.

1, Ex. A.) On March 23, 2006, the hearing officer entered an order awarding D.E. compensatory

education in the amount of "one hour for each hour of each school day for each year he attended

the Central Dauphin School District [and] fifteen hours for each of six weeks for missed summer

programs for the years from 2000 to 2004." (Doc. No. 1, Ex. A, at 24-25.) Neither party

appealed the order of the hearing officer.[1]

On December 18, 2006, Plaintiffs D.E. and his parents brought this action against the

District, seeking to recover a monetary equivalent of the nearly 10,000 hours of compensatory

education awarded to D.E. by the hearing officer's March 2006 order. Plaintiffs also seek

compensatory damages under the ADA, IDEA, and Section 504 of the Rehabilitation Act. On

February 12, 2007, Defendant filed an answer to Plaintiffs' complaint. (Doc. No. 6.) Pending

before the Court, fully briefed and ripe for disposition, is Defendant's motion for judgment on

the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 27.)

## II.    STANDARD OF REVIEW

At any time after the pleadings close and before the trial commences, a party may move

for a judgment on the pleadings. Fed. R. Civ. P. 12(c). The Court should accept the nonmovant's

allegations as true, and view all reasonable facts and inferences in the light most favorable to the

nonmoving party. Sikirica v. Nationwide Ins. Co., 416 F.3d 214 (3d Cir. 2005). The standard is

generally comparable to a motion to dismiss. Id. "Judgment will not be granted unless the

movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a

---

[1] After the hearing officer rendered her decision, Defendant initially sought to appeal the decision, but later withdrew the request.

matter of law." Id. at 220 (quoting Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d

Cir. 1991).

## III.    DISCUSSION

The District first argues that D.E.'s parents lack standing to bring claims on behalf of

D.E. In addition, Defendant claims that the failure to exhaust administrative remedies bars

Plaintiffs' claims, whereas Plaintiffs claim they were not aggrieved by the hearing officer's

decision and, therefore, had no reason to appeal the decision at the administrative level.

Furthermore, the District avers that neither D.E. nor his parents should be allowed to collect

compensatory damages under the IDEA, Rehabilitation Act, or the ADA for the alleged

violations under those statutes. The Court will address each of these issues, claim by claim.

### A.    IDEA claim

Defendant argues that the IDEA claims fail for three reasons. First, the District argues

that D.E.'s parents do not have standing to bring their individual claims under the IDEA.  Next,

it argues that because Plaintiffs did not appeal the hearing officer's decision to the Special

Education Appeals Panel, they have not exhausted their administrative remedies. Finally, the

District argues that even if Plaintiffs properly exhausted their IDEA claim, compensatory

damages are not an available remedy. Although the Court finds that Plaintiffs have standing, all

IDEA claims will be dismissed for failure to exhaust and the unavailability of compensatory

damages.

#### 1.    IDEA Standing

The Court finds that D.E.'s parents have standing to bring claims against the District. Since the filing of this case, the Supreme Court took up the issue of standing requirements under the IDEA in Winkleman v. Parma City Sch. Dist., 127 S. Ct. 1994 (2007). In Winkleman, the Supreme Court brought an end to the confusion among the circuits and held that the IDEA confers the same rights to parents as it does to children, abrogating the Third Circuit's holding in Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225 (3d Cir. 1998).[2] The Supreme Court specifically stated, "[P]arents enjoy enforceable rights at the administrative stage, and it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal court." Id. at 2002. The Supreme Court did not limit its holding, as Defendant suggests, to permit parents only the opportunity to act *pro se* on a child's behalf. Rather, the Supreme Court discussed how the grammatical structure of the statute, the entire statutory scheme, and the goals underlying the IDEA all support a finding that parents have independent rights under the IDEA because they, too, are negatively affected when their child fails to receive FAPE. Id.

D.E.'s parents are asserting their rights, which were negatively affected by the District's failure to provide D.E. with FAPE. Therefore, the Court finds that D.E.'s parents have standing to bring their substantive claims made under the IDEA.

## 2.      IDEA Exhaustion & Jurisdiction

---

[2] In Collinsgru, the Third Circuit had held that non-lawyer parents may not represent their child in court. 161 F.3d at 237. The court reasoned that parents do not have substantive rights to bring their own claims under the IDEA and common law and statutory rules prevent non-lawyers from representing others in court. Id. at 236.

Defendant claims that the Court lacks jurisdiction to hear the case because Plaintiffs have failed to exhaust their administrative remedies as required by the IDEA.[3] Plaintiffs argue that they properly exhausted their IDEA claims because they received a favorable decision at the administrative level and now seek only to enforce that order.

The IDEA is a complex legislative scheme that requires an aggrieved party to exhaust all administrative remedies before seeking relief from federal court. Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775 (3d Cir. 1994). The Third Circuit has recognized four situations where exhaustion is not required: 1) futility, 2) the question is a purely legal one, 3) the hearing officer lacks authority to provide a remedy, and 4) exhaustion would cause irreparable harm. Id. at 778-79. Further, a district court has jurisdiction to hear a civil action under the IDEA only in certain situations:

> [A]ny party aggrieved by the findings and decision [of the hearing officer at an administrative hearing or after an appeal] . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought . . . in a district court in the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A). Thus, the plain language of the statute grants federal jurisdiction over parties "aggrieved by the findings and decision" of the hearing officer.

At the time D.E.'s claim was filed, the administrative process in Pennsylvania required two steps: a due process hearing before the hearing officer and an appeal to the Special Education Due Process Review Panel. Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272 (3d Cir. 1996). There is no dispute between the two parties that the second step did not occur.

---

[3] As will also be discussed in part B, Section 504 and the ADA require a party to have exhausted their claims under the IDEA before relief can be sought, but do not contain a separate exhaustion requirement. Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 282 (3d Cir. 1996).

Plaintiffs have not argued that any of the exceptions apply; rather, they have argued simply that

they are not required to exhaust because they are not an aggrieved party by the hearing officer's

decision: "[T]he Hearing Officer rendered a unanimous decision in favor of the parents on all

aspects of the case." (Doc. No. 29, at 11.) In other words, Plaintiffs claim that they are not

challenging the decision of the hearing officer, but are only seeking clarification and

enforcement of the hearing officer's order. They ask the Court for compensatory damages and

for a court order directing the District to put the monetary value of the educational services owed

D.E. in a fund from which they can drawn down as needed to pay for D.E.'s compensatory

education. The exhaustion of Plaintiffs' two separate intended remedies–enforcement and

monetary damages–requires two separate analyses. The Court begins with a discussion of

exhaustion for the purposes of collecting compensatory damages and then turns to the question

of whether Plaintiffs have exhausted for purposes of clarifying the hearing officer's decision.

While it remains a question whether compensatory damages are available at all under the

IDEA, it is certainly true that compensatory damages are not available at the administrative

level. The unavailability of a remedy at the administrative level comprises the third exception to

the exhaustion requirement. See Komninos, 13 F.3d at 778; Derrick F. v. Red Lion Area Sch.

Dist., 586 F. Supp. 2d 282, 294-95 (M.D. Pa. 2008). From the standpoint of seeking

compensatory damages, that remedy is unavailable at the administrative level and thus the

administrative process can provide no more relief to Plaintiffs. Accordingly, Plaintiffs' claim for

compensatory damages falls within an exception to the IDEA exhaustion requirement. In so

stating, the Court finds here only that it has jurisdiction to award compensatory damages; the

availability of such damages will be taken up in the next part of this memorandum.

Moving on to the question of whether Plaintiffs' claim for "enforcement or clarification" of the hearing officer's decision has been properly exhausted, the Third Circuit has not directly ruled on the difficult question of whether a party seeking to enforce a favorable decision at the administrative level is an aggrieved party under the IDEA. In Jeremy H, the Third Circuit explicitly left open that question. 95 F.3d at 278. The court explained, "[Plaintiffs'] complaint also apparently seeks in part to enforce elements of the decision of the state administrative process. There may be some question whether this aspect of the complaint can properly be pursued under [§ 1415(i)(2)]."[4] Id. Without resolving the issue, the court further explained the argument in a footnote:

> The argument against the applicability of [§ 1415(i)(2)] would be that the [plaintiffs], in seeking judicial assistance to enforce portions of the IDEA administrative decision, were not persons "aggrieved by the findings and decision" within the meaning of [§ 1415(i)(2)], but rather persons aggrieved by the failure of the local school officials to implement the decision. The counter-argument would be that the [plaintiffs] were "aggrieved" by the fact that the administrative order favorable to [them] contained no enforcement mechanisms.

Id. at 278, n.10. However, neither need this Court come to that question because it finds that Plaintiffs are not actually seeking enforcement of the order, but to change its terms.

While Plaintiffs claim they are seeking to enforce the order of the hearing officer, they also admit that they have neither sought nor obtained compensatory education services for D.E., as required by the order. (Doc. No. 31 ¶ 7.) The hearing officer's order states:

> [T]he student is awarded one hour for each hour of each school day for each year he attended the Central Dauphin School District. . . .

---

[4]At the time Jeremy H. was written, the provisions of current section 1415(i)(2) were codified at section 1415(e)(2). For clarity, this Court has replaced all such references with the current section number: 1415(i)(2).

> The parent may decide how the hours should be spent. . . . **Reimbursement for the services shall be at the rate that the parent is obligated to pay**, not a district determined rate. It is urged that the **parent attempt to provide this student with compensatory services** and supports as soon as possible. . . . **Should the parties agree**, the district **may** set up a fund with a set dollar amount that the parent may draw upon for educational services and equipment.

(Doc. No. 1, Ex. 2, at 24) (emphasis added). The order then directs the District to comply with the memorandum, as excerpted above, by stating "the Central Dauphin School District is ordered to provide [D.E.] with compensatory education in the form and amounts above." (Id.)

Thus, the plain language of the order gives the parents the responsibility of determining and initiating the compensatory education services and makes the District responsible for paying for those services at face value once they have been attained. Based on the allegations in the pleadings, there is no evidence to support the contention that the order needs enforcement. Plaintiffs admit they have not sought compensatory education for D.E. (Doc. No. 31-3, at 1-4.) They also admit that they have not sought reimbursement from the District and that the District has not failed to compensate them for such services. (Id.)

To the extent Plaintiffs seek an order from the Court requiring the District to provide advance payment for education services or to create a fund, the Court finds that such a directive is inconsistent with the hearing officer's order, and Plaintiffs are seeking to rewrite rather than to enforce the order of the hearing officer. Such is a grievance that should have been requested at the administrative level. The plain words of the order do not provide for any such method of payment, and the order explicitly requires an agreement between the parties before setting up any fund from which monies may be drawn. The hearing officer unequivocally stated that the parents decide how the hours should be spent; that they will be reimbursed at an amount equal to

their payment for the services; that the hours are not to be spent for college tuition; and that the

parent should attempt to provide D.E. with compensatory services as soon as possible. If

Plaintiffs were dissatisfied with this arrangement, the appropriate remedy would have been to

file for a clarification or reconsideration of the order at the administrative level.

The policy behind the exhaustion requirement "is a strong one." Komninos, 13 F.3d at

778. The exhaustion requirement reflects Congress' view that a child's educational needs are

best served through parental involvement with the educational expertise of state and local

agencies. Id. (quoting Smith v. Robinson, 468 U.S. 992, 1011 (1984)); Hoeft v. Tucson Unified

Sch. Dist., 962 F.2d 1298, 1303 (9th Cir. 1992). That policy is not served by having this Court

reinterpret the hearing officer's decision before an attempt to reconsider the decision was made

at the administrative level; such a remedy would be inconsistent with the exhaustion

requirement.   Thus, to the extent Plaintiffs seek a court order directing the District to create a

fund to pay for D.E.'s educational services in advance of Plaintiffs' obtainment of those services,

Plaintiffs were aggrieved by the decision of the hearing officer and should have appealed to the

Educational Appeals Panel. For this reason, the Court holds that Plaintiffs have not exhausted

their administrative remedies with respect to seeking an order requesting advance payment for

D.E.'s compensatory education services and have no need to exhaust to make a compensatory

damages claim under the IDEA.

### 3.      Availability of Compensatory Damages Under the IDEA

Although the Court found that a claim seeking compensatory damages need not be

exhausted at the administrative level, it does not necessarily follow that compensatory damages

are available to Plaintiffs under the IDEA. In fact, based upon the foregoing, the Court finds that

compensatory damages are not available under the IDEA.

The IDEA states that "in any action brought under this paragraph [relating to

administrative procedures], the court . . . shall grant such relief as the court determines is

appropriate." 20 U.S.C. § 1415 (i)(2)(C)(iii). The Third Circuit has not explicitly determined

whether compensatory damages are an appropriate remedy in IDEA cases. However, numerous

other courts, including all other circuit courts to have taken up the issue, have held that

compensatory damages are not an available remedy under the IDEA. See, e.g., Nieves-Marquez

v. Puerto Rico, 353 F.3d 108 (1st Cir. 2003) (stating that "tort-like money damages are not

available under the IDEA"); Polera v. Bd. of Educ., 288 F.3d 478 (2d Cir. 2002) (holding that

the purpose of the IDEA is to provide educational services, not to compensate for personal

injury; therefore, monetary damages are not allowed); Sellers v. Sch. Bd., 141 F.3d 524 (4th Cir.

1998) (finding that the IDEA was not meant to advance tort-like claims); Derrick F. v. Red Lion

Area Sch. Dist., 586 F. Supp. 2d 282 (M.D. Pa. 2008) ("the Courts of Appeal that have

considered the issue have all held that compensatory damages are not available under the

IDEA."); C.J.G. v. Scranton Sch. Dist., 2007 WL 4269816 *8 (M.D. Pa. Dec. 3, 2007)

(acknowledging that most circuits have found that compensatory damages are inconsistent with

the purposes of the IDEA).

In addition, the Supreme Court spoke indirectly on this issue in Sch. Comm. of

Burlington v. Dep't of Educ., 471 U.S. 359 (1985). In Burlington, the Court analyzed the

Education of the Handicapped Act ("EHA").[5] The issue in <u>Burlington</u> was a different

one–whether a school district should reimburse a family for educational expenses they incurred

for their child while the litigation was ongoing–but the reasoning has direct bearing on Plaintiffs'

claim here.

In granting reimbursement to the family, the Supreme Court determined that

reimbursement for educational expenses incurred during pending litigation was consistent with

the EHA statutory scheme because educational expenses specifically are *not* damages. <u>Id.</u> at 371

("[Defendant] repeatedly characterizes reimbursement as 'damages,' but that simply is not the

case."). The Supreme Court further noted that it was Congress' intent to reimburse parents who

are forced to pay for education expenses, and that this money should not be classified as

damages. <u>Id.</u>

Here, Plaintiffs seek compensatory damages in addition to the award of 8730 hours of

compensatory education given by the hearing officer. Given the Supreme Court's emphasis that

Congress' intent in writing the IDEA was to "provide handicapped children with a 'free

appropriate public education' which emphasizes special education and related services designed

to meet their unique needs" (<u>Id</u>. at 370) and the strong distinction made between that education

and damages, the Court finds that compensatory damages are not available under the IDEA.

### B.     Rehabilitation Act and ADA Claims

Regarding the ADA and Rehabilitation Act claims, Defendants argue that these claims

should be also be dismissed for failure to exhaust and the unavailability of compensatory

---

[5] The EHA was renamed the IDEA in 1990 and contains language identical to that found in 20 U.S.C. § 1415(i)(2)(C)(iii) regarding "appropriate relief." <u>See</u> <u>A.W. v. Jersey City Pub. Schs.</u>, 468 F.3d 791, 796 n.8 (3d Cir. 2007).

damages. The Court disagrees. As stated above, when bringing an action for compensatory

damages alone under these acts, there is no need to fully exhaust. For the reasons stated below,

compensatory damages are available for Plaintiffs' ADA and Rehabilitation Act claims.

### 1.   Exhaustion and Jurisdiction under the ADA and Rehabilitation Act

Although Defendant argues that Plaintiffs' ADA and Rehabilitation Act claims must be

dismissed because they were not exhausted at the administrative level, there is no such

requirement. Where, as here, a plaintiff brings parallel claims under the ADA and Rehabilitation

Act based upon the same conduct that supports the plaintiff's IDEA claim, exhaustion is only

required to the same extent it is required under the IDEA. 20 U.S.C. § 1415(l); Derrick F., 586 F.

Supp. 2d at 295. As discussed, *supra* part A.2, exhaustion of an administrative remedy is not

required when it would be futile or the hearing officer is not authorized to give the Plaintiffs the

remedy they seek. Komninos, 13 F.3d at 778. Plaintiffs seek compensatory damages under the

ADA and Rehabilitation Act which are not available at the administrative level. Therefore,

Plaintiffs' ADA and Rehabilitation Act claims are not foreclosed for failure to properly exhaust.

The Court now turns to whether compensatory damages are, in fact, available to Plaintiffs under

the ADA and Rehabilitation Act despite their unavailability under the IDEA.

### 2.   Compensatory Damages under the Rehabilitation Act and ADA

Defendants argue that compensatory damages are unavailable to Plaintiffs under the

Rehabilitation Act and ADA. Plaintiffs counter that, regardless of the availability of

compensatory damages for the same underlying conduct under the IDEA or Section 1983, they

are entitled to receive compensatory damages for their claims brought directly under Section 504

of the Rehabilitation Act and the ADA. The Supreme Court has clearly held that Section 504 of

the Rehabilitation Act is enforceable through private causes of action, and the remedies available

are "coextensive with the remedies available in a private cause of action brought under Title VI

of the Civil Rights Act of 1964.[6] These remedies include compensatory damages, injunctive

relief, and other forms of relief traditionally available in suits for breach of contract." A.W. v.

Jersey City Public Schs., 486 F.3d 791, 804 (3d Cir. 2007) (quoting Barnes v. Gorman, 536 U.S.

181, 185 (2002)).

Further, the Third Circuit has stated that compensatory damages are available for cases

brought directly under Section 504. W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995) (overruled on

other grounds). In A.W. v. Jersey City Public Schs., the Third Circuit stated, "The remedies for

violation of Section 504 . . . include compensatory damages, injunctive relief, and other forms of

relief traditionally available in suits for breach of contract." 486 F.3d 791, 804 (3d Cir. 2007);

see also Adam C. Ex rel. Dennis C. v. Scranton Sch. Dist., 2008 WL 4411849 (M.D. Pa. Sep. 23,

2008).

Compensatory damages, then, are also allowed under the ADA because the ADA

incorporates by reference those damages provided by the Rehabilitation Act. 42 U.S.C. § 12133

("The remedies, procedures, and rights set forth in section 794a of Title 29[7] shall be the

remedies, procedures, and rights this subchapter provides to any person alleging discrimination

on the basis of disability in violation of section 12132 of this title."); Derrick F., 586 F.Supp.2d

---

[6] Title VI, unlike Title VII, does not contain an express private right of action, but the
Supreme Court has found an implied right of action under the statute for individual enforcement.
See e.g., A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 803-04 (3d Cir. 2007).

[7] 29 U.S.C. § 794(a) is also known as section 505 of the Rehabilitation Act.

at 297 ("Compensatory damages, including monetary damages, are available for violations of the ADA and Section 504.").

Accordingly, the Court holds that Plaintiffs may pursue compensatory damages for violations arising directly from Section 504 of the Rehabilitation Act.

### C.      Other Claims

Plaintiffs have stipulated to a waiver of their Section 1983 claims, Equal Protection claim, Substantive Due Process claim, and all claims for punitive damages. Accordingly, those claims are dismissed.

### IV.      CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' claims under the IDEA, section 1983, Equal Protection Clause, Substantive Due Process clause and punitive damages are dismissed. Plaintiff's claims for compensatory damages under the Rehabilitation Act and ADA are not dismissed.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **D.E., <u>et</u> <u>al</u>.,** | : | |
|     **Plaintiffs** | : | **Civil Action No. 1:06-CV-2423** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **CENTRAL DAUPHIN SCHOOL** | : | |
| **DISTRICT,** | : | |
|     **Defendant** | : | |

**ORDER**

**AND NOW**, on this 31st day of March 2009, for the reasons set forth in the

accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendant's motion for

judgment on the pleadings (Doc. No. 27) is **GRANTED IN PART AND DENIED IN PART:**

    1. Plaintiffs' compensatory damages claims brought directly under the Rehabilitation Act
are **not dismissed.**

    2. Plaintiffs' compensatory damages claims brought directly under the ADA are **not
dismissed**.

    3. Plaintiffs' claims under the IDEA are **dismissed.**

    4. Plaintiffs' claims under 42 U.S.C. § 1983 are **dismissed.**

    5. Plaintiffs' claims under the Due Process Clause are **dismissed.**

    6. Plaintiffs' claims under the Equal Protection Clause are **dismissed.**

              S/ Yvette Kane
              Yvette Kane, Chief Judge
              United States District Court
              Middle District of Pennsylvania