IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D.E., a minor, on his behalf by his parents, et.al., | : : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CENTRAL DAUPHIN SCHOOL DISTRICT, | : : | No. 06-2423 |
| Defendant. | : | |

# M E M O R A N D U M

**Stengel, J.**                                                                                                                          **January 3, 2013**

D.E. was a minor diagnosed with a learning disability and enrolled in school at the Central Dauphin School District.[1] D.E.'s parents, Mrs. Maria English and Mr. Ronald Sheffy,[2] on behalf of D.E. claim that while enrolled in the District he was deprived of a free appropriate public education ("FAPE") and that he was discriminated against based

---

[1] Plaintiffs allege that D.E.'s specific diagnosis includes severe learning disabilities in the areas of basic reading skills, reading comprehension, written expression, math reasoning, and math calculation; speech and language impairment with significant deficits in phonological awareness, phonological memory and rapid naming; and Other Health Impairment ("OHI") for Attention Deficit Hyperactivity Disorder ("ADHD"). (Doc. No. 1 at ¶¶ 5, 15, 30-31). In Defendant's answer, it is admitted that D.E. suffers from learning disabilities. The District lacks knowledge sufficient to form a belief as to the truth of Plaintiffs' allegations concerning D.E.'s current diagnosis and leaves Plaintiffs to their proof of those allegations. (Doc. No. 6 at ¶ 5).

[2] Ronald Sheffy failed to appear for deposition in this case and failed to prosecute the case on behalf of himself and D.E. (Doc. No. 91 at ¶ 15). Defendant has moved to dismiss Mr. Sheffy from the case for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Plaintiffs failed to respond to this argument in their response.

> Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule — except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 — operates as an adjudication on the merits. Fed. R. Civ. P. 41(b); citing <u>Hudson v. Dascani</u>, 2011 U.S. Dist. LEXIS 115192, at 2-6 (W.D. Pa. Aug. 31, 2011).

Based on Plaintiffs' failed attempts to locate Mr. Sheffy and the inactivity of Mr. Sheffy in prosecuting this case, I will grant Defendant's request to dismiss Mr. Sheffy pursuant to Fed. R. Civ. Pro. 41(b).

on his various disabilities in violation of the Americans with Disabilities Act and the Rehabilitation Act.[3]

## I. Background

D.E. attended a school in Central Dauphin County School District from kindergarten to the seventh grade, when he and his family moved. In 1994, when D.E. was in kindergarten, his school file indicated that he should have been placed in special speech and language therapy courses, but he was not. (Doc. No. 1-2. ¶¶ 11-12). Despite recommendations, the District did not develop an individualized education program ("IEP") for the student for the first kindergarten year. (Doc. No. 1-2 ¶ 11). Seven months into the school year, the District evaluated D.E. for speech and language therapy, but did not test him for any other potential learning disabilities. (Doc. No. 1-2 ¶ 13). Additionally, the subsequent IEP contained only speech and language goals despite teacher and parent concerns. The report card for the 1995-96 school year stated that D.E. had difficulty with "reading readiness," although the District had more information that other needs existed for the student. (Doc. No. 1-2 ¶¶ 14-15). D.E. had to repeat his kindergarten year. (Doc. No. 1-2 ¶ 16). At the end of the repeat kindergarten year, the teacher noted that D.E. was still not doing grade level work. (Doc. No. 1-2 ¶ 32).

In 1997, D.E. started first grade, and his IEP was modified to recommend that he be placed in a full-time learning support room and the parents approved. (Doc. No. 1-2 ¶ 32). D.E.'s parents had D.E. evaluated by Pinnacle Health Services, which recommended

---
[3] Defendant's Motion for Summary Judgment was filed on December 13, 2011. Defendant's Brief in Support and Statement of Material Facts were simultaneously filed on December 27, 2011, pursuant to the Court's December 13, 2011 Order and in compliance with Rule 7.5 and 7.6.

that D.E. be re-evaluated by the District "within the next year." (Doc. No. 1-2 ¶ 39). The District failed to re-evaluate D.E. for intelligence, but did administer an additional WIAT scale. (Doc. No. 1-2 ¶ 42). Although the teacher questioned D.E.'s placement in the program, the CER did not address D.E.'s language-based disabilities. (Doc. No. 1-2 ¶ 42).

D.E. started second grade in 1998 in a full-time support program. (Doc. No. 1-2 ¶ 45). D.E.'s mother requested evaluations because the student was regressing. (Doc. No. 1-2 ¶ 47). D.E.'s second grade teacher expressed concern about whether the emotional support class was appropriate. (Doc. No. 1-2 ¶ 48).

When D.E. began third grade, his IEP was again modified to read "seriously emotionally disturbed." The NORA issued in March 2000 calls for continued placement in life skills support, although this placement was unsupported.[4] (Doc. No. 1-2 ¶ 66). The student was then mistakenly identified as having mental retardation. There was no adaptive behavior assessment completed. (Doc. No. 1-2 ¶ 68). D.E. remained in the Life Skills Program throughout third and fourth grade. (Doc. No. 1-2 ¶ 75). When D.E.'s mother realized D.E. was identified as mentally retarded, she filed a complaint and withdrew D.E. from the summer program. (Doc. No. 1-2 ¶ 78). In response to the complaint, the District was willing to apologize and change the inaccurate designation on the student's records. (Doc. No. 1-2 ¶ 79). In August 2000, during an IEP meeting, a District staff person found the designation error, fixed it, and advised D.E.'s mother.

---

[4] The team felt that D.E. needed, in addition to emotional support, more academic focus at his level and with strategies to help D.E. foster academic progress. (Doc. No. 1-2 ¶ 71).

(Doc. No. 1-2 ¶ 81). The student was then inaccurately found to be ineligible for extended school year services. (Doc. No. 1-2 ¶ 88).

In 2001, D.E.'s IEP was changed, and D.E. was to participate in regular education courses for his fifth-grade year, with an emphasis on his specific learning disability.[5] (Doc. No. 1-2 ¶ 89). In sixth grade goals and specially designed instruction regarding behavior and social issues were dropped from the IEP with no explanation. (Doc. No. 1-2 ¶ 95). Yet again, the student was found to be ineligible for extended school year services. (Doc. No. 1-2 ¶ 96).

In the 2003-2004 academic year, D.E. was in seventh grade. D.E.'s goals were to increase his math skills to a fourth grade level. (Doc. No. 1-2 ¶ 103). The seventh grade teacher was not trained in any research based math instruction and she did not show any records demonstrating progress on IEP goals. (Doc. No. 1-2 ¶ 106). In December 2003, the team responsible for D.E.'s IEP delayed the process while waiting for a new ER, which resulted in D.E. working under an expired IEP for three months. (Doc. No. 1-2 ¶ 109). The hearing officer determined that the new ER did not go far enough in assessing D.E.'s needs and the subsequent designation of emotional disturbance is problematic based on the records or D.E.'s behavior. (Doc. No. 1-2 ¶ 113).

Beginning in eighth grade, the District convened a meeting with D.E.'s parents where they reviewed the previous IEP and an evaluation report. (Doc. No. 1-2 ¶ 116). D.E. then moved from the District. D.E.'s parents requested a due process hearing after

---

[5] D.E. was transferred to regular education on the basis of test results obtained from a Comprehensive Evaluation, However, this evaluation did not summarize the student or provide guidelines regarding his instructions. (Doc. No. 1-2 ¶ 85). Informed school personnel were pleased with D.E.'s progress in Life Skills, which also prompted D.E.'s transition. (Doc. No. 1-2 ¶ 90).

4

they moved alleging D.E. had not received a free adequate public education. After leaving the district, D.E. attended Cumberland Valley School District and then Pennsylvania Cyber School where he remains enrolled and taking classes. (Doc. No. 91 at ¶ 11). Later, D.E. obtained a forklift operator's license with the assistance of a job coach and a driver's license. (Doc. No. 91 at ¶¶ 12-13).

        A. <u>Outcome of the Administrative Hearing</u>

A hearing was held, and, in a detailed decision, the administrative officer found violations of the Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act. Among his factual findings were that D.E. was entitled to compensatory education from kindergarten to seventh grade because D.E. was denied a FAPE for all eight years while a student at the Central Dauphin School District. The District knew the student had more needs than those answered by speech and language therapy upon his entry into the district for his first year of Kindergarten.

The hearing officer awarded D.E. supplemental compensatory education in the amount of "one hour for each hour of each school day for each year he attended the Central Dauphin School District [and] fifteen hours for each of six weeks for missed summer programs for the years from 2000 to 2004."[6] The parent was to decide how the

---

[6] Specifically, the hearing officer's decision states:

> Therefore, the student is awarded one hour for each hour of each school day for each year he attended the Central Dauphin School District. In addition, he is awarded fifteen hours of each of six weeks for missed summer programs for the years from 2000-2004. The parent may decide how the hours should be spent, as long as they take the form of any appropriate developmental, remedial, or enriching instruction that furthers the goals of the student's pendent or future I.E.P.'s. Such hours must be in addition to the student's then current I.E.P. and may not be used to supplant such services. These services may occur after school hours, on weekends, and during the summer months, when convenient for the parent and the student. Reimbursement for the services shall be

5

hours should be spent, provided that they take the form of appropriate instruction and further the goals of the student's pendant or future IEPs. The order was not appealed. (Doc. No. 91 at ¶ 7)[7]

### B. Current Litigation

The subsequently filed federal complaint alleged violations of the IDEA, ADA, and §504 of the Rehabilitation Act. It sought to recover a monetary equivalent of the nearly 10,000 hours of compensatory education awarded by the hearing officer and compensatory damages under the ADA, IDEA, and the Rehabilitation Act.[8] Following a motion for judgment on the pleadings, only the ADA and Rehabilitation Act claims remain.[9] For the reasons stated below, I will grant the Defendant's motion for summary judgment.

## II. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record. Anderson v.

---

    at the rate that the parent is obligated to pay, not a district's determined rate. It is urged that the parent attempt to provide the student with compensatory services and supports as soon as possible.

[7] Plaintiff's statement of material facts.

[8] Specifically, Plaintiffs' alleged that as D.E.'s parent and natural guardian, Maria English, and Ronald Sheffy, Stepfather, bring this action to enforce the decision and order of the special education hearing officer dated March 23, 2006, and to bring claims for damages they have incurred because the Central Dauphin School District ("District") failed to provide D.E. with a free appropriate public education ("FAPE") in the least restrictive environment, and discriminated against D.E. in the provision of educational services because of his multiple disabilities. (Doc. No. 1 at ¶ 2).

[9] In April of 2007, the case was referred to mediation but did not settle.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. If the non-moving party has produced more than a

7

"mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity of the [moving party's] evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. Discussion

### Plaintiffs' § 504 Claim and ADA Claim[10]

The hearing officer in the underlying administrative action found that the District failed to provide a Free and Appropriate Public Education (FAPE) while D.E. was enrolled with the District. However, this finding alone is not evidence of *per se* discrimination under the ADA. Andrew M. v. Delaware Cty. Office of Menetal Health and Mental Retardation, 490 F.3d 337, 349-50 (3d Cir. 2007) (finding that "a violation of the IDEA is not a per se violation of §504."). Where a finding is made under the IDEA that a public school failed to provide FAPE, a plaintiff must still meet all of the elements of a prima facie case under to recover under § 504 of the Rehabilitation Act or the ADA. Id. (quoting Area Sch. Dist. v. H.H., 428 F. Supp. 2d 361, 363-364 (W.D. Pa. 2006)).

To show a prima facie case, D.H. must demonstrate that he: (1) has a disability; (2) "was otherwise qualified to participate in a school program;" and (3) "was denied the benefits of the program or was otherwise subject to discrimination because of [his]

---

[10] The substantive standards for determining liability under the Rehabilitation Act and the ADA are the same, McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 94-95 (3d Cir. 1995); Helen L. v. DiDario, 46 F.3d 325, 330 n.7 (3d Cir. 1995); 29 U.S.C. § 794(a); 42 U.S.C. § 12132.

8

disability."[11] Id. 42 U.S.C. § 12102(1)(C); 29 U.S.C. § 705(2)(B).[12] Additionally, the Supreme Court has made clear that the remedies available under the ADA and the Rehabilitation Act "are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964." Barnes v. Gorman, 536 U.S. 181, 185 (2002). Under Title VI, a plaintiff may not recover compensatory damages absent proof of intentional discrimination.[13] See Alexander v. Sandoval, 532 U.S. 275, 282-83 (2001); Sher v. Upper Moreland Twp. Sch. Dist., 2012 U.S. App. LEXIS 8923 (3d Cir. Pa. May 2, 2012) (quoting Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011))("[a]ll circuits to decide the question have held that to recover compensatory damages under either the ADA or the Rehabilitation Act, a plaintiff must establish that the agency's discrimination was intentional.")

In a recent case from the Eastern District, the court held that the plaintiff must adduce some "evidence of intent, such as bad faith, gross misjudgment, or deliberate indifference, to sustain a claim for compensatory damages" under the Rehabilitation Act and the ADA. Durrell v. Lower Merion Sch. Dist., 2012 U.S. Dist. LEXIS 101048, *16-

---

[11] Under the Rehabilitation Act, a plaintiff must also establish that the school district received federal funds. See Centennial Sch. Dist. v. Phil L., 799 F. Supp. 2d 473, 481 (E.D. Pa. 2001). See also Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238 (3d Cir. 1999) (citing W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995), abrogated on other grounds by A.W. v. Jersey City Public Schools, 486 F.3d 791 (3d Cir. 2007)). This element is not in dispute.

[12] Specifically, § 504 provides, in relevant part, that: "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial Assistance[.]" 29 U.S.C. § 794(a).

[13] Many other district courts in the Third Circuit have come to the same conclusion. See Swanger v. Warrior Run Sch. Dist., 2012 U.S. Dist. LEXIS 87870, *17-20 (M.D. Pa. June 25, 2012); Adam C. v. Scranton Sch. Dist., 2011 U.S. Dist. LEXIS 27423, *17-18, n.7 (M.D. Pa. Mar. 17, 2011); David G. v. The Council Rock Sch. Dist., 2012 U.S. Dist. LEXIS 51427, *9 (E.D. Pa. April 12, 2012); Chambers v. The Sch. Dist. of Phila. Bd. of Educ., 827 F. Supp. 2d 409, 421-22 (E.D. Pa. 2011).

17 (E.D. Pa. July 19, 2012); see also Chambers v. Sch. Dist. of Phila., 827 F. Supp. 2d 409, 422-24 (E.D. Pa. 2011); Brown ex rel. R.P. v. Sch. Dist. of Phila., No. 11-6019, 2012 U.S. Dist. LEXIS 104855, at *22-23 (E.D. Pa. July 26, 2012); David G. v. Council Rock Sch. Dist., No. 06-1523, 2012 U.S. Dist. LEXIS 51427, at *10-11 (E.D. Pa. Apr. 12, 2012). Intentional discrimination against a child solely by reason of his disability can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights; however, intentional discrimination does not require proof of animosity or ill will. See David G., 2012 U.S. Dist. LEXIS 51427, at *10-*11; Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999).[14] Plaintiffs could also prove intentional discrimination if an "official who has authority to address the alleged discrimination and to institute corrective measures on the [federal funding] recipient's behalf has actual knowledge of discrimination . . . and fails adequately to respond." Adam C v. Scranton Sch. Dist., 2011 U.S. Dist. LEXIS 27423 (M.D. Pa. Mar. 17, 2011) (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998)). Additionally, "in the special education context, courts have held that a plaintiff must demonstrate more than an incorrect evaluation or substantively faulty IEP to establish liability; a plaintiff must

---

[14] Numerous district courts within the Third Circuit have reached the same conclusion. See, e.g., Adam C. v. Scranton Sch. Dist., No. 3:07-cv-532, 2011 U.S. Dist. LEXIS 27423, 2011 WL 996171, at *4 n. 7 (M.D. Pa. Mar. 17, 2011) (Section 504 and ADA); Gallagher v. Allegheny Cnty., No. 09-cv-103, 2011 U.S. Dist. LEXIS 7047, 2011 WL 284128, at *7 n. 14 (W.D. Pa. Jan. 25, 2011) (same); Kaitlin C. ex rel. Shannon M. v. Cheltenham Twp. Sch. Dist., No. 07-cv-2930, 2010 U.S. Dist. LEXIS 20699, 2010 WL 786530, at *5 (E.D. Pa. Mar. 5, 2010) (Surrick, J.) (Section 504); L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist., No. 04-cv-1381, 2009 U.S. Dist. LEXIS 21737, 2009 WL 737108, at *5-*6 (D.N.J. Mar. 17, 2009) (same); Meadows v. Hudson Cty. Bd. of Elec., No. 04-cv-3979, 2006 U.S. Dist. LEXIS 64050, 2006 WL 2482956, at *10-*11 (D.N.J. Aug. 24, 2006) (Section 504 and ADA). See also Meagley, 639 F.3d at 389; Loeffler v. Staten Island University Hosp., 582 F.3d 268, 275 (2d Cir. 2009); Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 & n. 13 (9th Cir. 2001).

show that defendants acted with bad faith or gross misjudgment." R.B. ex rel. L.B. v. Bd. of Educ. of City of N.Y., 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000). See also Smith v. Special School District No. 1, 184 F.3d 764, 769 (8th Cir. 1999) (finding that it is not enough to show that the district made an improper placement, or that the attempted accommodations proved inadequate); Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Central School Dist., 368 F. Supp. 2d 313, 334 (S.D.N.Y. 2005). Thus, to defeat the motion for summary judgment and recover compensatory damages, D.H. must come forward with evidence from which a jury could find that Defendant acted intentionally; that is with bad faith, gross misjudgment, or deliberate indifference, and not simply negligently to the rights secured to him by the ADA and Rehabilitation Act.[15]

Plaintiff contends that summary judgment should not be granted because at the time the case was filed, Plaintiffs sought to enforce the decision from the March 23, 2006, administrative hearing.[16] Plaintiff argues that the position that the District was not liable for a "cash out" settlement was "odd" and more "peculiar" still was the result that the "still viable" IDEA claims were dismissed out of the case.[17] (Doc. No. 90 at 2-3).

---

[15] Courts applying the bad faith standard have held that negligence is insufficient to support a finding of bad faith. See, e.g., Williams v. Dist. of Columbia, 771 F. Supp. 2d 29, 31-32 (D.D.C. 2011); Charlotte-Mecklenburg Bd. of Educ. v. B.H., No. 07-189, 2008 U.S. Dist. LEXIS 83347, at *18-*25 (W.D.N.C. Sept. 24, 2008).

[16] Plaintiffs' argument was previously raised in Judge Kane's memorandum addressing the Defendant's for judgment on the pleadings (Doc. No. 33). Judge Kane held that Plaintiffs were not seeking to enforce the hearing officer's decision. Specifically the court held, "this Court … finds that Plaintiffs are not actually seeking enforcement of the order, but to change its terms." (Doc. No. 33 at 9). Additionally, had the Plaintiffs been seeking to enforce the judgment, Defendants have made clear that it remains "ready and willing to abide by the Hearing Officer's determination to reimburse Plaintiffs for expenses accrued while seeking educational services for D.E." (Doc. No. 92 at 6).

[17] These rulings occurred under former counsel for the Plaintiffs. Plaintiffs' currently contend that all the claims, either procedurally defaulted or withdrawn, were meritorious and improperly dismissed or withdrawn. Additionally, Plaintiffs claim that discovery under formal counsel was not properly executed. (Doc. No. 90 at 4). Regarding the IDEA claim, Plaintiffs raise the issue that "failure to provide the appropriate education alone the claim for liability

Plaintiff goes on to argue that the hearing officers award specifically litigated the Rehabilitation Act and resolves any claims under the ADA through collateral estoppel principles.[18]

---

under the IDEA[.]" (Doc. No. 90 at 12). These arguments by Plaintiff are not responsive to the issue. The only claims to survive previous motions practice are the ADA and the RA issues addressed in this memorandum. As articulated in Judge Kane's memorandum addressing the parties' motion on the pleadings, Plaintiffs failed to appeal the hearing officer's decision, which had the effect of waiving a request for a "cash out" award or any other challenges to the hearing officer's decision. (Doc. No. 33 at 11). Finally, regarding all claims either previously dismissed or withdrawn, a brief in opposition to Defendant's motion for summary judgment is not the appropriate document to raise these issues.

[18] In support of this argument, Plaintiff cites an appeal from a judgment of the United States District Court for the District of New Jersey that affirmed a holding of the bankruptcy court. Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210 (3d Cir. 1997). In the case, the bankruptcy court held that a default judgment entered in favor of appellee creditor in a fraud action, collaterally estopped appellant from claiming that the debt underlying the judgment was dischargeable. The court agreed that a party, who deliberately prevented resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel. Id. Although, this case articulates the concept of collateral estoppel, it in no way applies to the case at hand.

Collateral estoppel, or issue preclusion, forecloses "re-litigation in a later action . . . of an issue of fact or law which was actually litigated and which was necessary to the original judgment." Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 548 (3d Cir. 1996). In Derrick F. v. Red Lion Area Sch. Dist., 586 F. Supp. 2d 282, 296 (M.D. Pa. 2008), the court found that it made "no sense for the doctrine of collateral estoppel to preclude re-litigation of an administrative decision in an IDEA action …." because exhaustion of administrative remedies is a prerequisite to filing an IDEA suit. The court agreed with Defendant that "it would be absurd to hold that a decision by an administrative agency precludes judicial review of that decision." Derrick F., 586 F. Supp. 2d at 296. See also C.M. v. Bd. of Educ., 128 Fed. Appx. 876, 880 (3d Cir. 2005) (judicially unreviewed decision of the Office of Administrative Law is not binding); Brooks v. CBS Radio, Inc., 342 Fed. Appx. 771 (3d Cir. Pa. 2009) (same); Wolski v. City of Erie, 2011 U.S. Dist. LEXIS 18659 (W.D. Pa. 2011) (extending the Supreme Court's holding in Univ. of Tenn. v. Elliott, 478 U.S. 788, 796 (1986) and Astoria Federal Savings & Loan v. Solimino, 501 U.S. 104, 110-14 (1991) and following other District Courts to conclude that no preclusive effect should be given to the unreviewed decision of the City's Civil Service Commission); J.S.K. v. Hendry County Sch. Bd., 941 F.2d 1563, 1569 (11th Cir. 1991) (holding that judicially unreviewed state administrative hearings have no preclusive effect in federal court); Drinker v. Colonial Sch. Dist., 888 F. Supp. 674, 680 (E.D. Pa. 1995), aff'd on other grounds, 78 F.3d 859 (3d Cir. 1996) (unreviewed state administrative law IDEA proceedings do not have a preclusive effect upon the federal court system). But see, Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993) ("Decisions of state administrative agencies that have been reviewed by state courts are also given preclusive effect in federal court.").

Additionally, although the Plaintiffs have not argued this theory, "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Federal Courts must give preclusive effect to a judgment from a state court if the courts of that state would give preclusive effect to the judgment. Allen, 449 U.S. at 96. Pennsylvania courts apply res judicata when the following elements are present: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; [and] (4) identity of the quality in the persons for or against whom the claim is made." City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh, 559 A.2d 896, 901 (Pa. 1989); Schultz v. City of Philadelphia, 460 A.2d 833, 835 (Pa.Super. 1983); Montour School Dist. v. S.T., 805 A.2d 29, 40 (Pa.Cmwlth. 2002). Under Pennsylvania law, an administrative decision can have preclusive effect if the agency which issued the decision was "acting in a judicial capacity and

Plaintiffs argue that the underlying proceedings created a record of intentional discrimination. (Doc. No. 90 at 12). Plaintiffs contend that the record cites knowingly deficient standards to meet D.E.'s known needs. Id. They argue that the IEP and other plans were not sufficient to meet the educational needs of D.E., despite repeated efforts of D.E.'s mother, as evidenced in the record, to address the shortcomings and bring maters to the attention of the appropriate personnel. Id. Finally, Plaintiffs allege that all parties knew at all times that D.E. suffered from a learning disability, yet he was denied the appropriate education for nine (9) years. Id.

The Defendant argues that Plaintiffs have not stated a prima facie case because they cannot prove that the District intentionally discriminated against D.E. on the basis of his disability. Defendant argues that an IDEA violation does not automatically raise a claim under the RA or the ADA because a finding of a FAPE violation by the hearing

---

resolve[d] disputed issues of fact that the parties had an opportunity to fully litigate." J.S. v. Bethlehem Area School Dist., 794 A.2d 936, 940 (Pa.Cmwlth. 2002).

I find that neither collateral estoppel nor res judicata applies in the instant case. Concerning the collateral estoppel argument, I agree with the court in Derrick that it makes no sense to give a judicially unreviewed administrative decision preclusive effect on the reviewing district court. Moreover, res judicata does not apply because there is no "identity of the thing sued for." At the Due Process Hearing, the parents sought compensatory education for D.E. (Doc. No. 1-2). In this proceeding, the Plaintiffs are suing for monetary damages. As such, the doctrine cannot apply since the Plaintiffs are seeking a different form of relief. See I.D. v. Cumberland Valley Sch. Dist., 2005 U.S. Dist. LEXIS 48037, 1-3 (M.D. Pa. Oct. 5, 2005); Gow v. Department of Educ., 763 A.2d 528, 532 (Pa.Cmwlth. 2000) (finding that res judicata did not apply when the "thing sued for" in the first action was plaintiff's employment while the "thing sued for" in the second action was the plaintiff's certification).

Finally, it should be noted that federal courts have refused to give full faith and credit to unreviewed agency decisions, especially in cases alleging discriminatory action as the basis for recovery of money damages. See, e.g., Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104, 109 (1991) (explaining that "[the Full Faith and Credit Act] is inapplicable to the judicially unreviewed findings of state administrative bodies," and noting that federal courts should recognize no preclusion by state administrative findings in Title VII or Age discrimination claims); Roth v. Koppers Indus., Inc., 993 F.2d 1058, 1062-63 (3d Cir. 1993) (extending the rationale of University of Tennessee v. Elliott, 478 U.S. 788 (1986) that unreviewed state administrative factual findings in Title VII cases are not entitled to preclusive effect in subsequent federal court actions, to include both defensive and offensive uses of collateral estoppel).

officer is not enough for a claim a discrimination. (Doc. No. 80 at 6). Defendant argues that it had implemented an IEP for D.E. under its IDEA obligations and whether it was insufficient is not enough to create liability under the ADA.

There is no dispute that D.H. was qualified to participate in school activities.[19] The initial issue is whether D.H. has put forth sufficient evidence to raise a genuine dispute of material fact regarding whether the District intentionally discriminated against D.E. on the basis of his disability.

---

[19] Defendant argues first that D.E. is not disabled under the meaning of the ADA or the Rehabilitation Act. In their answer to the complaint Defendant agreed that D.E. had a learning disability. (Doc. No. 6 at ¶ 5). Plaintiff argues that these responses concede that D.E. had a disability under the ADA and Rehabilitation Act. A special education student who is qualified as disabled for purposes of the IDEA is not necessarily a qualified individual with a disability under the Rehabilitation Act. Bowers v. NCAA, 563 F. Supp. 2d 508, 533 (D.N.J. 2008).

Although both the Rehabilitation Act and the IDEA provide certain forms of relief for children with disabilities, the statutes have distinct purposes; "while the Rehabilitation Act provides relief from discrimination, the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination." L.T. v. Mansfield Tp. School Dist., No. 04-1381, 2007 U.S. Dist. LEXIS 58924, 2007 WL 2332308, *2 (D.N.J. Aug. 10, 2007) (citing Hornstine v. Township of Moorestown, 263 F. Supp. 2d 887, 901 (D.N.J. 2003)).

Additionally, there are separate statutory definitions of what it means to be disabled or handicapped. Under the IDEA, a "child with a disability" is defined as a child "(i) with [any of a list of impairments, including] specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services." Bowers, 563 F. Supp. 2d at 533 (quoting 20 U.S.C. § 1401(3)(A)). Under the regulations implementing the Rehabilitation Act, a "handicapped person" is one who "(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." Id. (quoting 34 C.F.R. § 104.3(j)(1)).

Therefore, "[a] special education student is not necessarily a 'qualified individual with a disability'" under the Rehabilitation Act. Bowers, 563 F. Supp. 2d at 533 (quoting Dohmen ex rel. Dohmen v. Twin Rivers Public Schools, 207 F. Supp. 2d 972, 975 n.2 (D. Neb. 2002)). There may be substantial overlap between the categories of children who "need[] special education and related services," on the one hand, 20 U.S.C. § 1401(3)(A), and children who have "a physical or mental impairment which substantially limits one or more major life activities," on the other. 34 C.F.R. § 104.3(j)(1). But a student receiving special education services under the IDEA is not *per se* handicapped under the Rehabilitation Act. Bowers, 563 F. Supp. 2d at 533 (citing Dohmen, 207 F. Supp. 2d at 975 n.2). Therefore, Plaintiff has the burden of proving by a preponderance of the evidence that D.E. had "a physical or mental impairment which substantially limit[ed] one or more major life activities." 34 C.F.R. § 104.3(j)(1)(i); cf. Andrew M. v. Delaware County Office of Mental Health and Mental Retardation, 490 F.3d 337, 349 (3d Cir. 2007) (legislative history of the Rehabilitation Act "does not indicate that a violation of the IDEA is a per se violation of the [Rehabilitation Act] . . . . a plaintiff must still prove that there was a violation of the [Rehabilitation Act]").

Plaintiff fails to cite to evidence that indicates D.E. had "a physical or mental impairment which substantially limit[ed] one or more major life activities." However, I have to reach a determination on this issue as Plaintiff has failed to establish the element of intentional discrimination required to set forth a prima facie case under the ADA and the Rehabilitation Act.

Plaintiffs argue that the record clearly evidences that the District intentionally discriminated against D.E.[20] However, Plaintiffs' claims of discrimination under both Section 504 and the ADA are based upon Defendant's alleged failure to implement an appropriate IEP for D.E.[21] See McGraw v. Board of Educ., 952 F. Supp. 248, 254 (D. Md. 1997) (holding that plaintiffs did not present evidence of intentional discrimination when their allegations were merely reformations of the allegations regarding perceived violations of the provisions of the IDEA. Plaintiffs provided no evidence that Defendants intentionally discriminated against them, or denied them services, because of the student's disability).

---

[20] Plaintiffs' entire argument concerning their Section 504 and ADA claims is as follows:

> The case is made out in all regards, including the element of intentional discrimination, on the basis of the Board of Education award. While defendants cite case law to support the proposition that liability under the IDEA does not automatically meet the standard for liability under the ADA and Rehabilitation Act, that is not at all what plaintiff has argued. In this case, it does so happen that the underlying proceedings have, however, created a record of intentional discrimination in violation of both Acts. Paragraph 58 of the award, for example, sitse [sic] knowingly deficient standards to meet [D.E.'s] known needs, and throughout that the IEP and other plans were not sufficient to meet the educational needs of [D.E.]. Further, the record shows repeated efforts of the mother to addrwss [sic] the shortcomings, and bringing maters to the attention of the appropriate personnel. All knew at all times that [D.E.] suffered from a learning disabilitry [sic] with emotionally complicating factors and psychiatric conditions. Yet he was consistently, for a period of nine years, not provided with the education he is entitled to be provided with as a matter of law.

(Doc. No. 90 at 12). Plaintiffs do not explain what action or inaction on the part of the School District constituted bad faith or gross misjudgment, and cite no evidence in support of their conclusory assertions, which are not sufficient to create a triable issue of fact with regard to Plaintiffs' Section 504 and ADA claims. See Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) ("a nonmoving party resisting a motion for summary judgment under Rule 56 cannot rest on its pleadings nor 'rely merely upon bare associations, conclusory allegations or suspicions'"); Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."). However, I will consider the facts contained in the record to determine whether the District intentionally discriminated against the student in violation of the ADA and the Rehabilitation Act.

[21] In Zahran v. N.Y. Dep't of Educ., 306 F. Supp. 2d 204 (N.D.N.Y. 2004), the court dismissed Plaintiffs' complaint after finding no allegations that Defendant acted with bad faith or gross misjudgment. The court found that the heart of the disability discrimination claims consisted of allegations that the Defendant failed to make necessary evaluations to develop a proper IEP for the student, and that it failed to offer prompt administrative review. These are essentially challenges to the program itself, not of any type of discriminatory decisions. Zahran, 306 F. Supp. 2d at 213-214.

In <u>Durrell v. Lower Merion Sch. Dist.</u>, 2012 U.S. Dist. LEXIS 101048 (E.D. Pa. July 19, 2012), the court held that Plaintiffs had not produced any evidence of intentional discrimination which raised a trial issue of fact. In that case, Plaintiffs asserted that the School District discriminated against the student by: "(1) placing her in Title I classes; (2) misidentifying her as a student with disabilities; (3) excluding her from regular education classes; and (4) placing her in ISL classes, which are not counted towards a student's grade-point average." <u>Durrell</u>, 2012 U.S. Dist. LEXIS 101048, at *15. The court agreed that Plaintiffs had raised a genuine dispute of material fact regarding whether the School District was incorrect when it classified S.H. as having specific learning disabilities in math and reading because their experts pointed to a number of defects in the initial evaluation and reevaluations of the student. The court also found that Plaintiffs had "produced at least some evidence that school staff may have been uncooperative with Plaintiffs' initial attempts to remove S.H. from special education services, and in one instance was not truthful with plaintiffs about the existence of certain protocols." <u>Id.</u> at 23-24. However, the court found that:

> [a]t most, this evidence raise[d] factual issues regarding whether the School District acted unreasonably in its treatment of [the student] and thus engaged … in educational malpractice. The ADA and Rehabilitation Act, however, are not educational malpractice statutes. While we find any misidentification of [the student] unfortunate, plaintiffs have not come forward with any evidence which would allow a reasonable jury to find that the School District intentionally discriminated against [the student] when it regarded her as disabled.

Based on this analysis, the court granted the defendant's motion for summary judgment.[22] Id.

Beginning in D.E.'s first kindergarten year, the District failed to provide a "full and individual initial evaluation" and, therefore, did not recognize that D.E. required special education. 20 U.S.C. § 1414(a)(1)(A). However, after determining that D.E. was in need of special education, the District implemented an IEP every year thereafter. While there were delays in evaluating D.E., there was no outright refusal to evaluate and accommodate D.E. His mother did make complaints and raised concerns in a few instances, but Plaintiffs have failed to adduce any evidence that the District knew of a substantial likelihood that it was impinging D.E.'s right to a free appropriate public education.

There is also no evidence in the record that could support an inference of intentional discrimination as to the misclassification of D.E. as mentally retarded. D.E asserts that he was placed into life skills without an appropriate evaluation and that the conducted evaluations did not indicate that the Life Skills designation was not the least restrictive environment as required under federal law. Even assuming that the District was on notice that D.E. may have been incorrectly identified as requiring Life Skills, there is no evidence in the record that could support an inference that the District acted

---

[22] In Beth B. v. Van Clay, 211 F. Supp. 2d 1020, 1035 (N.D. Ill. 2001), the court also found no proof of intentional discrimination. The court found that instructing district officials to maintain records in anticipation of a due process hearing does not equal bad faith. Although Plaintiff quarreled with the District's placement decision, there was no evidence that the district was trying to segregate the student because of animus towards the disabled. To the contrary, it is apparent district officials believed, in good faith, that the specific program would provide the best education for the student. Even though the district may not have cooperated with the student's parents and private therapists to the degree that they would have liked, there was no conspiracy to make the student fail. In short, the court found no evidence of intentional discrimination.

with bad faith, gross misjudgment, or deliberate indifference. As soon as D.E.'s mother notified the District, the District apologized, was not uncooperative, and suggested it would correct the error. Soon after D.E.'s mother noted the misclassification, someone from the team reviewing D.E. noticed and corrected the designation.

The Plaintiffs also appear to argue the Defendant's failure to implement a meaningful IEP illustrates the Defendant's conduct was "intentional discrimination." However, the Plaintiffs have presented the court with no evidence indicating a nexus between D.E.'s disability and the Defendant's failure to provide a FAPE. Nor do they provide evidence to show that these actions were intentionally discriminatory as opposed to instances of negligence by decision-makers and failures to provide D.E. a FAPE. See Zahran ex rel. Zahran v. N.Y. Dep't of Educ., 306 F. Supp. 2d 204, 213-14 (N.D.N.Y. 2004) (dismissing Rehabilitation Act claim where plaintiffs' alleged no bad faith or gross misjudgment, challenge was really an IDEA claim as it was directed toward the substance or adequacy of the program and not a decision to deprive plaintiff of access to the program itself). Because Plaintiffs have failed to present any evidence of intentional discrimination, Plaintiffs' claims under the Rehabilitation Act and the ADA cannot sustain Defendant's Motion for Summary Judgment.

## IV.     Conclusion

For the reasons set forth above, I will grant Defendant's motion for summary judgment.

An appropriate Order follows.